**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

**RECEIVED**

JAN 19 2018

CLERK, U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

| |
|---|
| **UNITED STATES OF AMERICA** and **THE STATE OF MINNESOTA** *ex rel.* Joy Hehn, and **JOY HEHN**, individually, <br><br> Plaintiffs, <br><br> v. <br><br> **HIMAGINE SOLUTIONS, INC.,** and **HENNEPIN HEALTHCARE SYSTEMS, INC.,** d/b/a **HENNEPIN COUNTY MEDICAL CENTER,** <br><br> Defendants. |

**DOCKET NO.**

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

**JURY TRIAL DEMANDED**

### COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff and *qui tam* Relator Joy Hehn, by and through her undersigned counsel The JTB Law Group, LLC, and Nichols Kaster, PLLP, alleges of personal knowledge as to her own observations and actions, and on information and belief as to all else, as follows:

### I.
### PRELIMINARY STATEMENT

1.    Relator Joy Hehn brings this *qui tam* action on behalf of the United States of America (the "United States") under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* ("FCA"), and the common law to recover three times the damages sustained by, and civil penalties and restitution owed to, the United States as a result of a scheme by HImagine Solutions, Inc. ("HImagine"), and Hennepin Healthcare Systems, Inc., d/b/a Hennepin County Medical Center ("HCMC" or the "Hospital") to fraudulently bill Medicare and Medicaid for millions of dollars.

2.    Relator Hehn also brings this action on behalf of the State of Minnesota ("Minnesota") under Minn. Stat. §§ 15C.01 *et seq.*, the Minnesota False Claims Against the State statute (the "MFCAS").



SCANNED
JAN 19 2018
U.S. DISTRICT COURT MPLS

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)**

RECEIVED
JAN 19 2018
CLERK, U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

3.     Defendants have defrauded the United States and the State of Minnesota by improperly billing Medicare and Medicaid for care provided at HCMC. Specifically, Defendants knowingly submitted claims in violation of Medicare and Medicaid rules and regulations, as follows:

   a. treating departments of the Hospital as separate billing entities, rather than treating HCMC providers as an entire billing group;

   b. billing separately for emergency-department services provided on the same day that a patient was admitted by a different service; and

   c. billing separately for inpatient evaluation and management services coincident and subsequent to surgeries.

4.     Defendants also intentionally submitted claims for "concurrent care" of some patients by more than one doctor in a given specialty, or by different doctors in different specialties, when the circumstances did not actually meet the criteria for concurrent-care billing.

5.     By these practices, HCMC sought and received payments from Medicare and Medicaid that the hospital did not legitimately deserve.

6.     In order to effectuate their scheme, Defendants knowingly (a) caused to be presented or presented false claims to Medicare and Medicaid; (b) made or caused to be made or used false records or statements material to these false claims; and (c) conspired to cause these claims to be presented and/or these records or statements to be made or used, causing Medicare and Medicaid to pay millions of dollars in reimbursements that should not have been paid.

7.     On information and belief, Defendants still follow these practices today.

8.     This Complaint has been filed *in camera* and under seal pursuant to 31 U.S.C. § 3730(b)(2). It will not be served on Defendants unless and until the Court so orders.

9.     A copy of this Complaint, along with written disclosure of substantially all material evidence and information that Relator possesses, has been served contemporaneously

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)

herewith on the Attorney General of the United States, the United States Attorney for the District of Minnesota, and the Attorney General of the State of Minnesota, pursuant to 31 U.S.C. § 3730(b)(2), Fed. R. Civ. P. 4(d), and Minn. Stat. § 15C.05(e).

## II.
## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because this action is brought for violations of the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, a federal statute.

11.     This court has subject matter jurisdiction over the MFCAS claims pursuant to 31 U.S.C. § 3732(b).

12.     The Court has subject matter jurisdiction over the common law claim pursuant to 28 U.S.C. § 1345.

13.     The Court has personal jurisdiction over Defendants because Defendants (a) are residents of, and are licensed to transact and do transact business in, this District; and (b) have carried out their fraudulent scheme in this District.

14.     Venue is proper in this District pursuant to 31 U.S.C. §§ 3732(a) and 28 U.S.C. § 1391 (b)(2), because Defendants can be found in, are licensed to do business in, and transact or have transacted business in this District, and events and omissions that give rise to these claims have occurred in this District.

15.     This Complaint has been filed within the period prescribed by 31 U.S.C. § 3731(b) and Minn. Stat. § 15C.11.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)

### III.
### NO PUBLIC DISCLOSURE;
### DIRECT AND INDEPENDENT KNOWLEDGE
### OF VIOLATIONS OF THE FALSE CLAIMS ACT

16.     There has been no public disclosure, relevant under 31 U.S.C. § 3730(e) or Minn.

Stat. § 15C.05(c), of the "allegations or transactions" in this Complaint.

17.     Relator makes the allegations in this Complaint based on her own knowledge,

experience and observations.

18.     Relator is the original source of the information on which any allegation herein

might be based, has direct and independent knowledge of such information, and has voluntarily

disclosed such information to the United States and the State of Minnesota before filing this

action.

### IV.
### THE PARTIES

**A.     Plaintiff the United States**

19.     Relator Hehn brings this action on behalf of Plaintiff the United States of

America. During all times relevant herein, the United States, acting through the Centers for

Medicare & Medicaid Services ("CMS"), has reimbursed Defendant HCMC for the provision of

various medical services and treatments for eligible individuals through the Medicare and

Medicaid programs. Thus, Relator brings this action on behalf of the United States and its

agency CMS, and on behalf of the Medicare and Medicaid programs.

**B.     Plaintiff the State of Minnesota**

20.     Relator Hehn also brings this action on behalf of Plaintiff the State of Minnesota.

During all times relevant herein, Minnesota, acting through its Department of Human Services

which administers Medical Assistance ("MA"), the state's Medicaid program, has reimbursed

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)**

Defendant HCMC for the provision of various medical services and treatments for eligible

individuals. Thus, Relator brings this action on behalf of the State of Minnesota and its agency

the Department of Human Services.

**C.     Plaintiff and Relator Joy Hehn**

21.     Relator Hehn brings this action on behalf of herself, the United States, and the

State of Minnesota.

22.     Hehn is a citizen of the United States and, at all relevant times, has been a resident

of Hennepin County, Minnesota.

23.     Hehn holds a certification from the American Academy of Professional Coders.

She was employed as a medical coder by Defendant HCMC from December 5, 2016, until May

19, 2017. She had previously coded for the Hospital as an employee of Defendant HImagine,[1] a

contractor for the Hospital, for slightly more than four months in 2014.

24.     During Relator's employment by Defendants, she and the other coders working

for HImagine and/or HCMC were instructed by Defendants to commit, and did commit, the

violations alleged herein.

**D.     Defendants**

25.     Defendant HImagine is a corporation formed and existing under the laws of the

State of Florida.

26.     HImagine has a principal place of business located at 600 Emerson Road, Suite

225, St. Louis, Missouri 63141, and can be served with process care of C.T. Corporation System,

1200 South Pine Island Road, Plantation, Florida 33324.

---

[1] The coding contractor in 2014 was KForce. Sometime late that year, KForce sold its Health Information Management Division – which had actually been performing the coding work at HCMC – to HImagine.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)

27.    During all times relevant herein, HImagine (or its predecessor in interest) contracted to provide medical coding services to Defendant HCMC.

28.    Defendant Hennepin Healthcare Systems, Inc., d/b/a Hennepin County Medical Center ("HCMC" or the "Hospital") is a public benefit corporation created and existing pursuant to the Minnesota Public Benefit Corporation Act, Minn. Stat. §§ 304A.001 et seq., with a principal place of business at 701 Park Avenue South, Minneapolis, Minnesota, 55415.

## V.
## DEFENDANTS' FRAUDULENT ACTS

### A.    Coding and Billing at HCMC

29.    During each of the two times Relator worked for Defendants, she was one of ten to fifteen individuals coding for HCMC. Relator and all of the other coders worked from their homes, using their computers, and communicated with their supervisors at HImagine and the Hospital via telephone and email, and by using shared electronic documents.

30.    During Relator's first tenure coding for HCMC, many of the coders and some of their supervisors were employees of Defendant HImagine, and others were employees of the Hospital. During Relator's second tenure, all coders and all of their supervisors were HCMC employees.

31.    Relator and the other coders would receive patient records electronically, in a "queue," once the teaching physician and the resident had completed their documentation. The coders would then assign CPT and ICD codes[2] based on the documentation provided.

---

[2] Current Procedural Terminology or "CPT" codes are maintained by the American Medical Association, and are designed to provide unique and uniform identifiers for medical, surgical, and diagnostic *services*. International Classification of Disease ("ICD") code sets, on the other hand, are maintained by the World Health Organization (WHO) and, as modified by CMS and the National Center for Health Statistics (NCHS), provide unique and uniform identifiers for *diagnoses and reasons for visits* in all American health care settings. Both code sets are used by providers and by insurance payers, including CMS and MA.

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)**

32.    When coders had questions about how to code a patient encounter, they would:

    a. · call their supervisors on the telephone;

    b. enter their questions on an electronically-shared "Question Log,"[3] returning periodically to check whether they had received an answer; and/or

    c. add "comments" to those electronic records about which they had questions.

33.    It is standard practice for a medical coder to code every patient encounter or other service or item that is documented in a patient's record, even those events that cannot be separately billed on the same day. This is because it is not a coder's responsibility to decide *which* services should be billed and which should not. That responsibility falls to a supervisor.

34.    So, for example, when a record contains entries on the same day for encounters by two different specialties using the same diagnoses, both encounters should be coded. But the coder knows that in almost all instances it would be inappropriate to actually *bill* separately for both services on the same day, *see* Medicare Claims Processing Manual, CMS Publication No. 100-04 (the "Claims Manual"),[4] Chapter 12, § 30.6.9.C[5]; *see also* Medicare Benefit Policy Manual, CMS Publication No. 100-02 (the "Benefits Manual"),[6] Chapter 15, § 30.E.[7] Because of this, the coder should flag such records for a supervisor's review.

---

[3] The Question Log was a shared electronic spreadsheet, to which all coders and their supervisors had access. Coders with questions were expected to consult the Question Log first, in the manner of a "Frequently Asked Questions" set, before calling or emailing a supervisor. Relator believes that one Question Log was in use during both of her tenures, and that the same Log is still in use today.

[4] CMS publishes the Medicare Claims Processing Manual as one of its "Internet Only Manuals." Individual chapters are available at https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/Internet-Only-Manuals-IOMs-Items/CMS018912.html (last accessed Dec. 2, 2017).

[5] Making clear that Medicare and Medicaid will reimburse for more than one physician visit per day to an inpatient *only* when the visits are billed with different diagnoses. Where the diagnoses are the same, the visits should be bundled together.

[6] *Available at* https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/Internet-Only-Manuals-IOMs-Items/CMS012673.html?DLPage=1&DLEntries=10&DLSort=0&DLSortDir=ascending (last accessed Dec. 2, 2017).

[7] Explaining that concurrent care by more than one physician is reimbursable only when (a) the patient's condition warrants such services on an attending (as opposed to consultative) basis; and (b) the services provided by each physician are reasonable and necessary.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)

35.   During both of Relator's tenures coding for HCMC, the coders were the last step in the process of electronically submitting claims to the insurers, including Medicare and Medicaid. When he or she finished work on a claim, the coder would click on commands indicating it was ready for submission; that claim would then be filed at a designated time, together with all other claims that were ready from that day. In other words, there was no supervisor's review built into the process.

36.   Moreover, coders were explicitly instructed *not* to flag instances such as just described (where two encounters on the same day were coded but should not both be billed) or other violations as described below. Instead, coders were instructed to try to "find" different diagnoses to justify such billing.

37.   For instance, it is inappropriate to bill separately for Emergency Department ("ED") services on the same day that a patient is admitted by a different specialty, for example Internal Medicine, when both encounters are for the same reason. So coders were instructed that, when faced with this situation, they were to look for ways to make it appear that the two encounters were for different reasons – for example, by coding one of the encounters as treatment of a chronic condition the patient happened to have (like diabetes), even though that condition was actually being managed by home medications and there was no documented basis for associating that diagnosis with either the ED services or the Internal Medicine admission.

38.   During Relator's tenures at HCMC, the instructions to find diagnoses to justify the separate coding of all patient encounters were given by Marie Medes, Abstracting Supervisor; Chelsea Raukar, Professional Fee Coding Educator; and Kari Goodrie, Coding Coordinator.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)

**B.    Defendants' Billing Practices Violated CMS and MA Rules**

39.     During her first tenure as a coder at HCMC, Relator kept her own contemporaneous notes of some of her work. The tables below are excerpts from one set of those notes, showing Relator's coding for services provided between August 24 and September 11, 2014 – a period of about two-and-a-half weeks.

40.     The tables below show numerous instances of improper coding for Medicare and Medicaid patients, Done by Relator *per the instructions of her supervisors at HCMC and HImagine*. This improper coding resulted in the submission of fraudulent claims to those programs.

***Example: Patient A***

41.     The codes for the August 24-25, 2014 hospital stay of "Patient A" are shown in the table immediately below. This patient is a Medical Assistance (Medicaid) beneficiary, as indicated by the legend "(MA)" on line 27:

| | MRN# | Service | Date | CPT | Modifier | Diagnosis | Adm/Dischg |
|---|---|---|---|---|---|---|---|
| 26 | ███ | Medicine | 8/24/14 | 99221 (denied MD exam) | GC | 730.28, 722.92, 042, v15.81 | 8/24-8/28 |
| 27 | (MA) | Medicine | 8/25/14 | 99232 | GC | 730.28, 722.92, v15.81 | |
| 28 | | ID | 8/26/14 | 99232 (No referring) | GC | 730.28, 722.92, 042, v15.81 | |
| 29 | | Medicine | 8/26/14 | 99232 | GC | 730.28, 722.92, 042, v15.81 | |
| 30 | | Medicine | 8/27/14 | 99232 | GC | 730.28, 722.92, 787.91, v15.81 | |
| 31 | | Medicine | 8/28/14 | 99239 | GC | 730.28, 722.92, 041.12, 042 | |

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)

42.    Evaluation and management ("E/M") visits, using CPT code 99232, were billed for this patient by both Infectious Diseases ("ID") services (line 28) and Medicine services (line 29) on the same date, August 26, 2014, with the exact same diagnoses. Such duplicative billing is expressly prohibited under the Claims Manual, which makes clear that Medicare and Medicaid will reimburse for more than one physician visit per day to an inpatient *only* when the visits are billed with different diagnoses; where the diagnoses are the same, the visits should be bundled together. *See* Claims Manual, Chapter 12, § 30.6.9.C; *see also* Benefits Manual, Chapter 15, § 30.E (explaining that concurrent care by more than one physician is reimbursable *only* when (a) the patient's condition warrants such services on an attending (as opposed to consultative) basis; and (b) the services provided by each physician are reasonable and necessary).

### *Example: Patient B*

43.    The codes for the August 26-28, 2014 hospital stay of "Patient B" are shown in the table immediately below. This patient is also a Medical Assistance beneficiary (*see* line 62):

| | MRN# | Service | Date | CPT | Modifier | Diagnosis | Other | Adm/Dischg |
|---|---|---|---|---|---|---|---|---|
| 61 | | Medicine | 8/27/14 | 99221 (No PFHX) | No | 682.7 | Coded and billed[8] | 8/26-8/28 |
| 62 | (MA) | ID | 8/27/14 | 99252 | GC | 682.7 | | |
| 63 | | Podiatry | 8/27/14 | 99252 (No fam hx) | GC | 682.7 | | |
| 64 | | ID | 8/28/14 | 99231 | GC | 682.7 | | |
| 65 | | Podiatry | 8/28/14 | 99231 | GC | 682.7 | | |
| 66 | | Medicine | 8/28/14 | 99239 | | 682.7 | | |

44.    This patient was seen by physicians from three different specialties – Medicine, Infectious Diseases, and Podiatry – all on the same day for two days running, August 27 and

---

[8] In this instance, Relator did not bill for the encounter by Medicine on line 61 (as indicated by the "No" entry in the Modifier column) because that encounter had *already* been billed (indicated by the "Coded and billed" entry in the "Other" column). But this still means that, in the end, Medicine, Infectious Diseases, and Podiatry each billed for encounters on August 27 *and* August 28, 2014, all under the exact same diagnosis.

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)**

August 28, 2014. All of these encounters were billed using the same diagnosis code. Billing these visits separately contravenes Claims Manual guidance.[9] *See* Chapter 12, § 30.6.9.C; *see also* Benefits Manual, Chapter 15, § 30.E.

> *Example: Patient C*

45.     The codes for the August 26-28, 2014 hospital stay of "Patient C" are shown in the table immediately below:

| | MRN# | Service | Date | CPT | Modifier | Diagnosis | Adm/Dischg |
|---|---|---|---|---|---|---|---|
| 149 | | Surgery-ED | 8/26/14 | 99243- (det exam, no fam hx) | GC | 682.3 | 8/26-8/29 |
| 150 | (MA) | Medicine | 8/26/14 | 99221 (No Fam Hx) | GC | 682.3, 042, 305.70 | |
| 151 | | Surgery Abscess | 8/26/14 | Procedure note only by Resident ▮ | | | |
| 152 | | Surgery | 8/27/14 | 99231 | GC | 682.3 | |
| 153 | | Medicine | 8/27/14 | Note states unable to obtain Hx/Exam- non billable | | | |
| 154 | | Medicine | 8/28/14 | 99232 | GC | 682.3, 042 | |
| 155 | | ID | 8/28/14 | 99233 | GC | 042, 682.3, 041.12 | |
| 156 | | Surgery | 8/28/14 | 99231 | GC | 682.3 | |
| 157 | | Surgery | 8/29/14 | Unbillable | GC | 682.3 | |
| 158 | | Medicine | 8/29/14 | 99239 | GC | 682.3 | |
| 159 | | ID | 8/29/14 | 99233 | GC | 682.3, 041.12, 042 | |

46.     Two different services (Surgery-ED and Medicine) billed for this Medical Assistance patient on August 26 (lines 149-151); three different services (Medicine, ID and

---

[9] In addition, the entries for Infectious Disease and Podiatry services on August 27 were coded using a CPT code for consultation (99252); however, the CPT codes for consultation (99241-99245 and 99251-99255) were no longer recognized for payment under Medicare Part B as of January 1, 2010. *See, e.g.*, https://www.cms.gov/Outreach-and-Education/Medicare-Learning-Network-MLN/MLNMattersArticles/downloads/SE1010.pdf (last accessed Dec. 3, 2017). However, Relator and the other coders were instructed to use these codes.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)

Surgery) billed on August 28 (lines 154-156); and two different services (Medicine and ID)

billed on August 29, 2014. In fact, per the Claims Manual, *all* of these services should have been

bundled under a global charge for the patient's surgery, which actually occurred on August 26

(*see* line 149-151). *See* Claims Manual, Chapter 12, § 30.6.6 (stating that services, including E/M

services, provided postoperatively by the doctor who performed the surgery are separately

reimbursable *only* when they are (a) unrelated to the postoperative care of the procedure, (b)

supported by documentation showing same, and (c) billed with the modifier -24); *see also*

Chapter 4, § 10.12 (stating that outpatient services, including emergency room services, provided

to a beneficiary on the day of or during the three calendar days prior to an inpatient admission

must be bundled with the payment for that admission, if those outpatient services are provided by

the admitting hospital or an entity that is wholly owned or wholly operated by the admitting

hospital).

47.    This patient's post-surgical encounters were submitted without the -24 modifier.

However, Defendants actually instructed Relator and the other coders to fraudulently use that

modifier and to invent diagnoses unrelated to normal postoperative care, to make the claims for

such visits appear legitimate. For the most part, Relator followed those instructions.

**Example: Patient D**

48.    The codes for the September 5-9, 2014 hospital stay of "Patient D" are shown in

the table immediately below. This patient is a Medicare beneficiary, as indicated by the "(MCR)"

entry on line 402:

|  | MRN# | Service | Date | CPT | Modifier | Diagnosis | Other | Adm/Dischg |
|---|---|---|---|---|---|---|---|---|
| 401 |  | Medicine | 9/6/14 | 99232 (Pt stable, no ROS) | GC | 427.31, v45.02 | Two notes | 9/5-9/9 |
| 402 | (MCR) | Cardiology | 9/6/14 | 99252 | 4EM,GC | 427.31, v45.02, 425.4, | | |

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)

| | | | | | 428.22 | | |
|---|---|---|---|---|---|---|---|
| 403 | | | | 99232 | 4CC,GC | | |
| 404 | | Medicine | 9/7/14 | 99232 | GC | 427.31, v45.02, 425.4, 428.22 | |
| 405 | | Cardiology | 9/7/14 | 99232 | GC | 427.31, v45.02, 425.4, 428.22 | |
| 406 | | Cardiology | 9/8/14 | 99232 | GC | 427.31, v45.02, 425.4 | |
| 407 | | CardioElectro | 9/8/14 | 99232 | No | 996.72, 427.31 | Shared note |
| 408 | | Medicine | 9/8/14 | 99232 | GC | 996.72, 427.31, | |
| 409 | | Medicine | 9/9/14 | 99239 | GC | 996.72, 427.31, 425.4 | |

49.     Medicine and Cardiology billed separately for this patient on September 6 (lines 401 and 403),[10] September 7 (lines 404-405), and September 8 (lines 406 and 408),[11] under the same diagnoses, when they should have been bundled together on each of those days. *See* Claims Manual, Chapter 12, § 30.6.9.C; *see also* Benefits Manual, Chapter 15, § 30.E.

***Example: Patient E***

50.     The codes for the September 7-11, 2014 hospital stay of "Patient E" are shown in the table immediately below. This patient is a Medicare beneficiary (*see* line 455):

| | MRN# | Service | Date | CPT | Modifier | Diagnosis | Other | Adm/ Dischg |
|---|---|---|---|---|---|---|---|---|
| 454 | 0878057 | Fam Medicine | 9/7/14 | 99221 (Exam) | GC | 577.0, 577.1, 112.0, 585.2 | | 9/7-9/11 |
| 455 | (MCR) | Fam Medicine | 9/8/14 | 99232 | GC | 577.0, 577.1, 599.0, 276.1 | | |
| 456 | | GI | 9/8/14 | 99233 | 4CC,GC | 577.0 | | |

[10] Note that for this patient, the consultation code (line 402) was *not* billed; however, line 403 (99232, a Level 2 Progress Note, also for Cardiology) *was* billed.

[11] The CardioElectro service on September 8 (line 407) was *not* separately billed (see the "No" entry in the Modifier column).

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)

| 457 | | | | 99253 (Det exam) | 4EM,GC | | | |
|---|---|---|---|---|---|---|---|---|
| 458 | | Fam Medicine | 9/9/14 | 99232 | GC | 574.20, 577.0, 577.1, 599.0 | | |
| 459 | | GI | 9/9/14 | 99231 | GC | 577.0 | | |
| 460 | | Fam Medicine | 9/10/14 | 99231 | No | 577.0 | Note not tied to res note but complete | |
| 461 | | Fam Medicine | 9/11/14 | 99238 (time noted) | GC | 574.20, 577.1 | Duplicate dischrg note- one w/ correct date and one without correct date | |

51. Two services (Family Medicine and GI) billed separately for encounters with this patient on September 8 (lines 455-457) and September 9 (lines 458-459), when they should have been bundled together. Unbundled billing in this context contravenes Claims Manual guidance. *See* Chapter 12, § 30.6.9.C; *see also* Benefits Manual, Chapter 15, § 30.E.

### Example: Patient F

52. The codes for the September 8-11, 2014 hospital stay of "Patient F" are shown in the table immediately below. This patient is a Medicaid beneficiary (*see* line 463):

| | MRN# | Service | Date | CPT | Modifier | Diagnosis | Other | Adm/ Dischg |
|---|---|---|---|---|---|---|---|---|
| 462 | | Neurology | 9/8/14 | (MD's name) | GC | 780.39 | Resident ties note to MD | 9/8- 9/11 |
| 463 | (MA) | Medicine | 9/8/14 | 99221 (ROS) | GC | 780.39 | | |
| 464 | | Neurology | 9/9/14 | 99231 | GC | 780.39 | Resident ties note to MD | |
| 465 | | Medicine | 9/9/14 | 99231 | GC | 780.39, 311 | | |
| 466 | | Medicine | 9/10/14 | 99231 | GC | 780.39, 311 | | |
| 467 | | Neurology | 9/10/14 | 99231 | GC | 780.39 | Attestation only w/exam- prob foc (does not link to resident note) | |
| 468 | | Neurology | 9/11/14 | Unbillable- | | | | |

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)

| | | | | no exam (Is overread of EEG billed by ▮▮▮▮▮) | | | ⁓ | |
|---|---|---|---|---|---|---|---|---|
| 469 | | Medicine | 9/11/14 | 99238 (time noted) | GC | 780.39, 311 | ⁓ | |

53.    Both Neurology and Medicine billed for this patient on September 8 (lines 462-463), September 9 (lines 464-465), and September 10 (lines 466-467). Such duplicative, unbundled billing is expressly forbidden by the Claims Manual. *See* Chapter 12, § 30.6.9.C; *see also* Benefits Manual, Chapter 15, § 30.E.

54.    The foregoing are all examples of improper "unbundling," that is, billing separately for services that should be billed as one combined entry. Relator is personally aware of many hundreds of other instances, from both of her tenures, in which bills were improperly coded and submitted to Medicare and MA.

55.    Relator frequently raised concerns about Defendants' coding practices, in phone calls and emails with her supervisors, in the Question Log, and in comments on individual patient records. On every occasion she was instructed to bill for all services that were provided by different specialties.

56.    Relator has personal knowledge that these practices resulted in the submission to Medicare and MA of fraudulent requests for reimbursement, because she knows that the HCMC system was set up so that bills, once coded, went straight to the insurers, including Medicare and Medical Assistance.

57.    On information and belief, Defendants continue to follow these fraudulent practices.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)

## VI.
## THE STATUTORY FRAMEWORK

**A.   Medicare**

58.    The Medicare program, Title XVIII of the Social Security Act, was enacted by Congress to pay for certain healthcare services provided to certain segments of the population. Entitlement to Medicare is based on age, disability, or affliction with end-stage renal disease. *See* 42 U.S.C. §§ 1395 *et seq.*

59.    HHS, through CMS, administers the Medicare program.

60.    Part B of the Medicare program authorizes payment of federal funds for medical and other health services, including physicians' professional fees for inpatient care. *See generally* Benefits Manual, Chapter 6.

61.    Medicare Part B is funded by insurance premiums paid by enrolled Medicare beneficiaries and contributions from the federal treasury. Eligible individuals who are age 65 or older, or disabled, may enroll in Part B to obtain benefits in return for payments of monthly premiums. 42 U.S.C. §§ 1395j, 1395o, 1395r.

62.    42 U.S.C. 1395y(a)(1)(A) provides that "no payment may be made under ... part B for any expenses incurred for items or services which ... are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member."

63.    CMS enters into agreements with healthcare providers such as HCMC to establish their eligibility to seek reimbursement from CMS for services rendered to patients who are Medicare beneficiaries. During all times relevant herein, to become an authorized Medicare Part B participant, a provider was required to certify as follows:

> I agree to abide by the Medicare laws, regulations and program instructions that apply to this supplier. ... I understand that payment of a claim by Medicare is

16

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)

conditioned upon the claim and the underlying transaction complying with such laws, regulations, and program instructions ..., and on the supplier's compliance with all applicable conditions of participation in Medicare.

CMS Form-855B (07/11), at 31.

64.     By virtue of the agreements in Form-855B, each claim submitted by an enrolled provider carries with it an implied certification of compliance with those conditions. Furthermore, the agreements also constitute an ongoing express certification of compliance.

65.     Once enrolled, a Medicare provider such as HCMC bills CMS for the care provided to Medicare beneficiaries. It does so by submitting a claim to the Medicare Administrative Contractor ("MAC")[12] for that region, at the time of each patient's discharge.

66.     Claims may be submitted using Form CMS-1500.[13] That form requires the provider to make the following certification:

> In submitting this claim for payment from federal funds, I certify that: 1) *the information on this form is true, accurate and complete*; ... 3) I have provided or will provide sufficient information required to allow the government to make an informed eligibility and payment decision; 4) *this claim, whether submitted by me or on my behalf by my designated billing company, complies with all applicable Medicare and/or Medicaid laws, regulations, and program instructions for payment*. . . 5) *the services on this form were medically necessary* ....

*Id.*, at 2 (emphasis added).

67.     Electronic submission of claims is generally preferred. CMS specifies the minimum content of the enrollment form by which a provider such as HCMC can sign up to

---

[12] A MAC is a private health care insurer contracted by CMS to process Medicare claims in a specific geographic jurisdiction. MAC jurisdictions can be found at https://www.cms.gov/Medicare/Medicare-Contracting/Medicare-Administrative-Contractors/Downloads/AB-MAC-Jurisdiction-Map-Dec-2015.pdf. (last accessed Dec. 2, 2017).

[13] *Available at* https://www.cms.gov/Medicare/CMS-Forms/CMS-Forms/downloads/cms1500.pdf (last accessed Dec. 2, 2017).

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)**

submit claims electronically to its regional MAC.[14] Per that guidance an enrollment form must

require the enrolling provider to agree to at least the following statements:

> 7. That it will submit claims that are accurate, complete, and truthful;
>
> * * *
>
> 12. That it will acknowledge that all claims will be paid from Federal funds, that the submission of such claims is a claim for payment under the Medicare program, and that anyone who misrepresents or falsified or causes to be misrepresented or falsified any record or other information relating to that claim that is required pursuant to this agreement may, upon conviction, be subject to a fine and/or imprisonment under applicable Federal law; [and]
>
> * * *
>
> 14. That it will research and correct claim discrepancies[.]

Claims Manual, Chapter 24 § 30.2.

68.     Compliance with applicable Medicare program rules and regulations is material to

the government's decision to pay and its subsequent payment of claims. In order to be

reimbursable by Medicare, services must be medically necessary, must actually be provided, and

must be documented in a manner that allows CMS to determine if the services are properly

payable. *See* Form CMS-1500.

69.     At all times relevant herein, Defendant HCMC has been an enrolled Medicare

provider. HCMC is eligible to receive reimbursement from CMS for care it provides to patients

who are insured through Medicare.

**B. ·     Minnesota Medical Assistance (Medicaid)**

70.     In conjunction with Medicare, Congress enacted Medicaid under Title XIX of the

Social Security Act, 42 U.S.C. §§ 1396 *et seq.*

71.     Through Medicaid, federal grants are made available to the states "for medical

assistance to low-income persons who are age 65 or over, blind, disabled, or members of families

---

[14] *See* Claims Manual, Chapter 24.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)

with dependent children or qualified pregnant women or children. The program is jointly financed by the Federal and State governments and administered by States. Within broad Federal rules, each State decides eligible groups, types and range of services, payment levels for services, and administrative and operating procedures. Payments for services are made directly by the State to the individuals or entities that furnish the services." 42 C.F.R. § 430.0.

72.     Hospital care is one of the health benefits funded by Medicaid.

73.     Under the Medicaid program, the federal government pays a specified percentage of each state's Medicaid program expenditures. *See* 42 U.S.C. § 1396d(b). This is referred to as the state's Federal Medical Assistance Percentage. Minnesota's Federal Medical Assistance Percentage for 2017 was 50%.[15] In other words, in 2017 the state shared the cost of its Medical Assistance program equally with the federal government.

74.     At all times relevant to this Complaint, the United States has paid the State of Minnesota its Federal Medical Assistance Percentage, and the State itself has funded the remainder of the program expenditures of the state's Medicaid program.

75.     To be eligible for reimbursement, a provider must enter into a provider agreement with Minnesota MA, under which the provider expressly agrees to, *inter alia*:

> 2. Comply with all federal and state statutes and rules relating to the delivery of services to individuals and to the submission of claims for such services;
>
> * * *
>
> 8. Assume full responsibility for the accuracy of claims submitted to DHS in accordance with the certification requirements of 42 C.F.R. 455.18 and Minnesota Statutes 256B.27, subd. 2.
>
> * * *

---

[15] https://aspe.hhs.gov/basic-report/fy2017-federal-medical-assistance-percentages (last accessed September 10, 2017).

10. ... [S]ubmit claims only for services, supplies and equipment that are medically necessary as defined at Minnesota Rules 9505.0175, subp. 25, and ... that Provider knows of has reason to know are properly reimbursable under federal and state statutes and rules.

Provider Agreement, Form DHS-4138-ENG 4-13.[16]

76.     By virtue of these agreements, each claim submitted by an enrolled provider carries with it an implied certification of compliance with those conditions. Furthermore, the agreements also constitute an ongoing express certification of compliance.

77.     Compliance with applicable Medicaid program rules and regulations is material to the governments' decision to pay and their subsequent payment of claims. In order to be covered, services must be medically necessary, must actually be provided, and must be documented in a manner that allows CMS and MA to determine if the services are properly payable.

78.     At all times relevant herein, Defendant HCMC has been an enrolled MA provider, and has been eligible to receive reimbursement from MA for care it provides to patients who are insured through MA.

C.      Yearly Cost Reporting for Medicare and Medicaid

79.     Providers must submit separate reports to Medicare on a yearly (twelve months) basis, 42 C.F.R. § 413.20(b), "furnish[ing] such information ... as may be necessary to (i) Assure proper payment by the program ...; (ii) Receive program payments; and (iii) Satisfy program overpayment determinations," *Id.*, 413.20(d)(1).

80.     Hospital providers such as Defendant HCMC are expected to file this report using form CMS 2552-10 – the Hospital and Hospital Health Care Complex Cost Report Certification and Settlement Summary. This report includes the following notice and certification, to be signed by an "officer or administrator" of the provider:

---

[16] *Available at* https://edocs.dhs.state.mn.us/lfserver/Public/DHS-4138-ENG (last accessed Sept. 10, 2017).

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)**

MISREPRESENTATION OR FALSIFICATION OF ANY INFORMATION CONTAINED IN THE COST REPORT MAY BE PUNISHABLE BY CRIMINAL, CIVIL AND ADMINISTRATIVE ACTION, FINE AND/OR IMPRISONMENT UNDER FEDERAL LAW. FURTHERMORE, IF SERVICES IDENTIFIED IN THIS COST REPORT WERE PROVIDED OR PROCURED THROUGH THE PAYMENT DIRECTLY OR INDIRECTLY OF A KICKBACK OR WERE OTHERWISE ILLEGAL, CRIMINAL, CIVIL AND ADMINISTRATIVE ACTION, FINES AND/OR IMPRISONMENT MAY RESULT.

CERTIFICATION BY OFFICER OR ADMINISTRATOR OF PROVIDER(S)

I HEREBY CERTIFY that I have read the above statement and that I have examined the accompanying electronically filed or manually submitted cost report … and that to the best of my knowledge and belief, it is a true, correct and complete statement prepared from the books and records of the provider in accordance with applicable instructions, except as noted. *I further certify that I am familiar with the laws and regulations regarding the provision of health care services, and that the services identified in this cost report were provided in compliance with such laws and regulations.*

Form CMS 2552-10, at 1 (emphasis added).[17]

81.     By virtue of this certification, each claim submitted by a provider in a given reporting period carries with it an implied certification of compliance with "the laws and regulations regarding the provision of health care services." Furthermore, the certification also constitutes a retrospective express certification of compliance.

82.     At all times relevant herein, HCMC has submitted annual cost reports to CMS, using form CMS 2552-10 or an analog.

83.     Minnesota law requires hospitals to make similar yearly cost reports, and the Commissioner of Health may require "attestation by responsible officials … that the contents of the reports are true." Minn. Stat. § 144.698.

---

[17] *Available at* https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/Downloads/P152_40.zip (last accessed Sept. 10, 2017).

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)**

**D.      The Federal False Claims Act**

84.      The False Claims Act, 31 U.S.C. §§ 3729 ("FCA"), establishes treble damages liability for an individual or entity that:

>   a.   "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," 31 U.S.C. § 3729(a)(l)(A);
>
>   b.   "knowingly makes, uses, or causes to be made or used, a false record or statement material  to a false or fraudulent claim, *id.* § 3729(a)(l)(B); or
>
>   c.   "conspires to defraud the Government by getting a false or fraudulent claim allowed or paid," *id.* § 3729(a)(l)(C).

85.      "Knowing," within the meaning of the FCA, is defined to include reckless disregard and deliberate indifference. *Id.*

86.      In addition to treble damages, the FCA also provides for assessment of a civil penalty for each violation or each false claim.[18]

87.      Finally, the FCA also provides for payment of a percentage of the United States' recovery to a private individual who brings suit on behalf of the United States (the "Relator") under the FCA. *See* 31 U.S.C. § 3730(d).

**E.      The Minnesota False Claims Against the State Statute**

88.      The Minnesota False Claims Against the State statute ("MFCAS") is similar to the FCA but instead covers claims made to Minnesota Medical Assistance. *See* Minn. Stat. §§ 15C.01 *et seq.*

89.      The MFCAS provides, in pertinent part, that any person who

>   (1) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

---

[18] Pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, as amended by the Debt Collection Improvement Act of 1996, 28 U.S.C. § 2461, FCA civil penalties are: (a) $5,500 to $11,000 for violations occurring from September 29, 1999, to November 2, 2015; (b) $10,781 to $21,563 for violations occurring from November 2, 2015, to February 3, 2017; and (c) $10,957 to $21,916 for violations occurring on or after February 4, 2017. *See* 28 C.F.R. 85.5.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)

> (2) knowingly makes or uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; [or]
>
> (3) knowingly conspires to commit a violation of clause (1) [or] (2)
>
> * * *
>
> is liable to the state or the political subdivision [victimized by the fraud] for a civil penalty of not less than $ 5,500 and not more than $ 11,000 per false or fraudulent claim, plus three times the amount of damages that the state or the political subdivision sustains because of the act of that person … [as well as] the costs of a civil action brought to recover any penalty or damages.

*Id.*, § 15C.02.

90.    The MFCAS also has a *qui tam* provision, under which "a person may maintain an action under this chapter on the person's own account and that of the state," *id.*, § 15C.05(a), and will receive a share of any recovery, *id.*, § 15C.13.

91.    An action under the MFCAS "may not be commenced more than three years after the date of discovery of the fraudulent activity by the prosecuting attorney or more than six years after the fraudulent activity occurred, whichever occurs later, but in no event more than ten years after the date on which the violation is committed." *Id.*, § 15C.11.

## VII.
## FIRST CLAIM FOR RELIEF
## FEDERAL FALSE CLAIMS ACT: PRESENTATION OF FALSE CLAIMS

92.    Relator repeats and re-alleges all preceding paragraphs of the Complaint inclusive, as if fully set forth herein.

93.    Throughout the statutory period, Defendants have knowingly and intentionally presented claims to CMS that did not conform to CMS guidelines.

94.    The certifications that Defendant HCMC made in conjunction with each of these claims, including but not limited to the certifications made by HCMC to become an enrolled

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)

Medicare provider and to maintain that status, were false, and their falsity was known to Defendant HImagine.

95.    Accordingly, Defendants have knowingly presented and/or caused to be presented, and continue to knowingly present and/or cause to be presented, false or fraudulent claims to CMS for payment in violation of 31 U.S.C. § 3729(a)(l)(A).

96.    The false claims presented by or caused to be presented by Defendants caused the United States, through its agency CMS and that agency's Medicare and Medicaid programs, to pay out sums that it would not have paid if CMS had been made aware of the falsity of Defendants' claims and certifications.

97.    Each false or fraudulent claim presented or caused to be presented to the United States is a separate violation of the FCA.

98.    By reason of the false or fraudulent claims that Defendants have knowingly presented or caused to be presented, the United States has been damaged, and continues to be damaged, in a substantial amount to be proven at trial. Relator therefore respectfully requests an order awarding the United States treble damages plus a civil monetary penalty for each violation, and awarding Relator the maximum award permitted under 31 U.S.C. § 3730(d).

### VIII.
### SECOND CLAIM FOR RELIEF
### FEDERAL FALSE CLAIMS ACT: MAKING OR USING
### FALSE RECORD OR STATEMENT TO CAUSE FALSE CLAIM TO BE PAID

99.    Relator repeats and re-alleges all preceding paragraphs of the Complaint inclusive, as if fully set forth herein.

100.    As described above, throughout the statutory period, Defendant HImagine has prepared or assisted in the preparation of false records, upon which the claims submitted by Defendants to Medicare and Medicaid were based.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)

101.    As described above, throughout the statutory period, Defendant HCMC has knowingly and falsely certified that it was submitting these claims in full compliance with applicable federal and state laws.

102.    Accordingly, Defendants have knowingly made and used false records and statements, and continue to knowingly make and use false records and statements, material to false or fraudulent claims to CMS for payment in violation of 31 U.S.C. § 3729(a)(l)(B).

103.    Defendants' creation and use of these false records and statements caused the United States, through its agency CMS and through that agency's Medicare and Medicaid programs, to pay out sums that it would not have paid if CMS had been made aware of the falsity of Defendants' records or statements.

104.    By reason of the false or fraudulent records or statements that Defendants have created and used to support the submission of their false and fraudulent claims, the United States has been damaged, and continues to be damaged, in a substantial amount to be proven at trial. Relator therefore respectfully requests an order awarding the United States treble damages plus a civil monetary penalty for each violation, and awarding Relator the maximum award permitted under 31 U.S.C. § 3730(d).

## IX.
### THIRD CLAIM FOR RELIEF
### FEDERAL FALSE CLAIMS ACT: CONSPIRING TO SUBMIT FALSE CLAIMS

105.    Relator repeats and re-alleges all preceding paragraphs of the Complaint inclusive, as if fully set forth herein.

106.    As set forth above, throughout the statutory period, Defendants have conspired together to submit to CMS claims that did not conform to CMS guidelines.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)

107.    Accordingly, Defendants have knowingly conspired, and continue to conspire, to defraud the United States by getting false or fraudulent claims allowed or paid, in violation of 31 U.S.C. § 3729(a)(3) (1986), and conspired to commit violations of 31 U.S.C. §§ 3729(a)(1)(A) and 3729(a)(1)(B), in violation of 31 U.S.C. § 3729(a)(1)(C) (2009).

108.    By reason of the false or fraudulent claims that Defendants have conspired to get allowed or paid, and/or by reason of their conspiracy to violate 31 U.S.C. §§ 3729(a)(1)(A) and 3729(a)(1)(B), the United States has been damaged, and continues to be damaged, in a substantial amount to be proven at trial. Relator therefore respectfully requests an order awarding the United States treble damages plus a civil monetary penalty for each violation, and awarding Relator the maximum award permitted under 31 U.S.C. § 3730(d).

## X.
## FOURTH CLAIM FOR RELIEF
## MINNESOTA FALSE CLAIMS AGAINST THE STATE ACT:
## PRESENTATION OF FALSE CLAIMS

109.    Relator repeats and re-alleges all preceding paragraphs of the Complaint inclusive, as if fully set forth herein.

110.    Throughout the statutory period, Defendants have knowingly and intentionally presented claims to MA that did not conform to CMS or MA guidelines.

111.    The certifications that Defendant HCMC has made in conjunction with each of these claims, including but not limited to the certifications made by HCMC to become an enrolled MA provider and to maintain that status, were false, and their falsity has been known to Defendant HImagine.

112.    Accordingly, Defendants have knowingly presented and/or caused to be presented, and continue to knowingly present and/or cause to be presented, false or fraudulent claims to MA for payment in violation of Minn. Stat. § 15C.02(1).

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)

113.   The false claims presented by or caused to be presented by Defendants have caused Minnesota, through its agency the Department of Human Services and that agency's MA program, to pay out sums that it would not have paid if MA had been made aware of the falsity of Defendants' claims and certifications.

114.   Each false or fraudulent claim presented or caused to be presented to the State of Minnesota is a separate violation of the MFCAS.

115.   By reason of the false or fraudulent claims that Defendants knowingly presented or caused to be presented, Minnesota has been damaged, and continues to be damaged, in a substantial amount to be proven at trial. Relator therefore respectfully requests an order awarding Minnesota treble damages plus a civil monetary penalty for each violation, and awarding Relator the maximum award permitted under Minn. Stat. §§ 15C.12 and 15C.13.

## XI.
### FIFTH CLAIM FOR RELIEF
### MINNESOTA FALSE CLAIMS AGAINST THE STATE ACT:
### MAKING OR USING FALSE RECORD OR STATEMENT
### TO CAUSE FALSE CLAIM TO BE PAID

116.   Relator repeats and re-alleges all preceding paragraphs of the Complaint inclusive, as if fully set forth herein.

117.   As described above, throughout the statutory period, Defendant HImagine has prepared or assisted in the preparation of false records, upon which the claims submitted by Defendants to MA were based.

118.   As described above, throughout the statutory period, Defendant HCMC has knowingly and falsely certified that it was submitting these claims in full compliance with applicable federal and state laws.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)

119.   Accordingly, Defendants have knowingly made and used false records and statements, and continue to knowingly make and use false records and statements, material to false or fraudulent claims to MA for payment in violation of Minn. Stat. § 15C.02(2).

120.   Defendants' creation and use of these false records and statements have caused Minnesota, through its agency the Department of Human Services and that agency's MA program, to pay out sums that it would not have paid if MA had been made aware of the falsity of Defendants' records or statements.

121.   By reason of the false or fraudulent claims that Defendants have knowingly presented or caused to be presented, Minnesota has been damaged, and continues to be damaged, in a substantial amount to be proven at trial. Relator therefore respectfully requests an order awarding Minnesota treble damages plus a civil monetary penalty for each violation, and awarding Relator the maximum award permitted under Minn. Stat. §§ 15C.12 and 15C.13.

## XII.
### SIXTH CLAIM FOR RELIEF
### MINNESOTA FALSE CLAIMS AGAINST THE STATE ACT:
### CONSPIRING TO SUBMIT FALSE CLAIMS

122.   Relator repeats and re-alleges all preceding paragraphs of the Complaint inclusive, as if fully set forth herein.

123.   As set forth above, Defendants have conspired together to submit to MA claims that did not conform to CMS guidelines.

124.   Accordingly, Defendants have knowingly conspired, and continue to knowingly conspire, to defraud Minnesota by getting false or fraudulent claims allowed or paid, and conspired to commit violations of Minn. Stat. §§ 15C.02(1) and (2), in violation of § 15C.02(3).

125.   By reason of the false or fraudulent claims that Defendants have conspired to get allowed or paid, or by reason of their conspiracy to violate Minn. Stat. §§ 15C.02(1) and (2),

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)**

Minnesota has been damaged, and continues to be damaged, in a substantial amount to be proven

at trial. Relator therefore respectfully requests an order awarding Minnesota treble damages plus

a civil monetary penalty for each violation, and awarding Relator the maximum award permitted

under Minn. Stat. §§ 15C.12 and 15C.13.

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE,** Relator respectfully requests that this Court enter judgment in her favor and

that of the United States and Minnesota, and against Defendants, granting the following:

(A)    On the First, Second, and Third Claims for Relief (violations of the FCA, 31 U.S.C. §§ 3729(a)( l)(A), 3729(a)(l)(B), and 3729(a)(l)(C)), an award to the United States for treble its damages, in an amount to be determined at trial, plus a penalty in the amount of $21,916 for each false claim submitted in violation of the FCA;

(B)    On the First, Second, and Third Claims for Relief, an award to the United States for its costs pursuant to 31 U.S.C. § 3729(a)(3);

(C)    On the First, Second, and Third Claims for Relief, an award to Relator in the maximum amount permitted under 31 U.S.C. § 3730(d);

(D)    On the Fourth, Fifth, and Sixth Claims for Relief (violations of the MFCAS), an award to Minnesota for treble its damages, in an amount to be determined at trial, plus a penalty in the amount of $11,000 for each false claim submitted in violation of the MFCAS;

(E)    On the Fourth, Fifth, and Sixth Claims for Relief, an award to Minnesota for its costs pursuant to Minn. Stat. § 15C.12;

(F)    On the Fourth, Fifth, and Sixth Claims for Relief, an award to Relator in the maximum amount permitted under Minn. Stat. § 15C.13;

(G)    And on all Claims for Relief,

    1.   An award to Relator of the reasonable attorneys' fees, costs, and expenses she incurred in prosecuting this action;

    2.   An award to the United States, Minnesota, and to Relator for their costs of court;

    3.   An award to the United States, Minnesota, and to Relator for pre- and post-judgment interest at the rates permitted by law; and

(H)    An award of such other and further relief as this Court may deem to be just and proper.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Relator demands trial by

jury on all questions of fact raised by the Complaint.

Dated: January 19, 2018

Respectfully submitted,

**JTB LAW GROUP, LLC**
**Lead Counsel**

*/s/ Jason T. Brown*
Jason T. Brown
    (*pro hac vice* application forthcoming)
Patrick S. Almonrode
    (*pro hac vice* application forthcoming)
155 2nd Street, Suite 4
Jersey City, NJ 07302
(877) 561-0000 (office)
(855) 582-5297 (fax)
*jtb@jtblawgroup.com*
*patalmonrode@jtblawgroup.com*

**NICHOLS KASTER, PLLP**
**Local Counsel**

*/s/ Michele R. Fisher*
Michele R. Fisher (MN Bar # 303069)
Steven A. Smith (MN Bar # 260863)
Michelle L. Kornblit (MN Bar # 0397778)
4600 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
(612) 256-3200 (office)
(612) 338-4878 (fax)
*fisher@nka.com*
*smith@nka.com*
*mkornblit@nka.com*

*Attorneys for Relator Joy Hehn*

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)**

## CERTIFICATE OF SERVICE

I hereby certify that on January 19, 2018, I caused a true copy of the Complaint in the matter captioned *United States of America ex rel. Joy Hehn and State of Minnesota ex rel. Joy Hehn v. HImagine Solutions, Inc., And Hennepin Healthcare Systems, Inc., d/b/a Hennepin County Medical Center,* to be served upon the following, along with written disclosure of substantially all material evidence and information possessed by Relator:

*by hand delivery to*

Office of the United States Attorney
District of Minnesota
U.S. Courthouse
300 S. 4th Street, Suite 600
Minneapolis, MN 55415

Office of the Attorney General
State of Minnesota
1100 Town Square tower
445 Minnesota Street
St. Paul, MN 55101

*by USPS Registered Mail, Return Receipt Requested, to*

Office of the Attorney General of the United States
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

s/ *Michele R. Fisher*
Michele R. Fisher